IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BAGG, DAVID CROTTY, KATHLEEN GEISSE, CRYSTAL DILLON and LESLIE JOHNSTON, Individually and on Behalf of All Other Persons Similarly Situated, <br><br>                     Plaintiffs, <br><br>          v. <br><br> HIGHBEAM RESEARCH, INC., THE GALE GROUP, INC., and CENGAGE LEARNING, INC., <br><br>                     Defendants. | Case No. 12 C 9756 <br><br> Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  For the reasons stated herein, the Motion is granted in part and denied in part.

### I.   FACTUAL BACKGROUND

Plaintiffs Robert Bagg, David Crotty, Crystal Dillon, Kathleen Geisse and Leslie Johnston, (hereinafter, collectively, the "Plaintiffs"), on behalf of themselves and others similarly situated, brought the instant suit against Defendants HighBeam Research, Inc., The Gale Group, Inc., and Cengage Learning, Inc. (hereinafter, collectively, "HighBeam" or "Defendants").  In their Amended Complaint, Plaintiffs claim Defendants are liable for violations of (1) the Massachusetts Consumer Protection Act

(the "MCPA"); (2) the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFA"); (3) the Illinois Automatic Contract Renewal Act (the "IACRA"); and (4) unjust enrichment.

The crux of the case concerns HighBeam's alleged use of deceptive practices on its website *www.highbeam.com*. According to Plaintiffs, HighBeam tricked consumers into paying for subscriptions to its online research services by offering a free seven-day trial and then after the trial ended, charged consumers for the subscriptions without their knowledge. Plaintiffs describe this practice as a "Free-To-Pay" conversion, and explain that this occurs when "consumers are automatically billed for a service or membership if consumers do not take affirmative steps to cancel during the Free Trial period." Amend. Compl. at 1-2.

Plaintiffs filed this suit initially in the United States District Court of Massachusetts. However, the case was transferred to this Court after the District Court in Massachusetts determined that a forum-selection clause in the User Agreement on HighBeam's website (the "User Agreement") required the case to be heard in the Northern District of Illinois.

Defendants filed the instant Motion pursuant to Rule 12(b)(6). Attached to their Motion are two declarations and a handful of other documents which they contend support dismissal. Plaintiffs have objected to these attachments and

argue that the Court's consideration of such would transform the Motion to Dismiss to a motion for summary judgment pursuant to Rule 12(d). Plaintiffs argue, in the alternative, that if the Court considers these documents, then it should also review the documents Plaintiffs included with their response brief.

After reviewing the filings of both parties, the Court declines to consider any of attachments at this stage in the litigation. None are dispositive in determining whether the Plaintiffs' claims should be dismissed, and do not fall under any of the Seventh Circuit's exceptions to Rule 12(d). *See Moore v. Martin*, No. 89-C-7473, 1990 WL 71029, at *1 (N.D. Ill. May 8, 1990) (the Court has discretion whether to consider extraneous documents to a motion to dismiss and often rejects such evidence if it is not "substantial or comprehensive enough to facilitate disposition of the action."); s*ee also*, *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (explaining that if documents outside the pleadings are (1) referred to in the complaint; (2) concededly authentic; or (3) central to the plaintiff's claim, the Court may consider such documents without converting a 12(b)(6) motion to one for summary judgment). Thus, in ruling on the instant Motion, the Court proceeds under Rule 12.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. *See*

*Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, the Court takes all well-pled allegations of the complaint as true, and views them in the light most favorable to the plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and provide the defendant with fair notice of the claim and its basis. FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007).

When a plaintiff asserts claims of fraud, such allegations must satisfy the heightened pleading requirements of Rule 9(b). FED. R. CIV. P. 9(b); *see also, Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how" of the fraud. *See Borsellino*, 477 F.3d at 507. Rule 9(b), read in conjunction with Rule 8, requires plaintiffs to plead "the time, place and contents" of the purported fraud, but not evidence. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F.Supp. 720, 726 (N.D. Ill. 1993).

### III. ANALYSIS

As an initial matter, Plaintiffs have indicated that Kathleen Geisse, one of the originally named Plaintiffs, seeks to dismiss her claims voluntarily. *See* Pls.' Resp. at 2 n.1. The

Court grants this request and dismisses Geisse's claims without prejudice. Thus, the Plaintiffs that remain are Bagg, Crotty, Dillon, and Johnston. These Plaintiffs contest Defendants' Motion to Dismiss.

### A. Count I - Massachusetts General Laws, Chapter 93A

Count I of Plaintiffs' Amended Complaint alleges a violation of Chapter 93A under Massachusetts General Laws. This chapter makes it unlawful to use "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Mass. Gen. Laws ch. 93A § 1 *et seq*. Defendants contend the claim fails because it is precluded by the User Agreement's choice-of-law provision. Plaintiffs respond that their consumer fraud claims "derive from Defendants' extra-contractual representations about their services," and thus are not subject to the User Agreement's choice-of-law provision. Amend. Compl. at 16.

Even if the Court accepted Plaintiffs' argument regarding the inapplicability of the choice-of-law provision (which at this stage, the Court declines to rule on), Count I still fails. It is well established that when a federal court exercises diversity jurisdiction it must follow the forum state's conflict of laws principles. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Under Illinois law, the Court is required to "select the law of the jurisdiction that has the 'most

significant relationship' to the events of which the suit arose, and to the parties." *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006) (citations omitted). The Seventh Circuit instructs that "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-26 (7th Cir. 2006). In consumer fraud cases, "the injury is decidedly where the consumer is located . . . [and not] where the seller maintains its headquarters." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002).

In this case, the only Plaintiff that resides in Massachusetts is Bagg. Plaintiffs' Amended Complaint proposes a class that includes "all persons [] in the United States who signed up for highbeam.com's free trial and were subsequently charged for monthly and/or yearly membership(s) and/or monthly and/or years' membership renewals that they did not want and/or did not authorize." Amend. Compl. at 22. Assuming the Court certified the proposed class, Plaintiffs could not (as a class) pursue a claim under Massachusetts' consumer fraud laws. This is true because the place of injury for each individual class member will vary. *See Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585-86 (N.D. Ill. 2008) (explaining that Illinois' choice-of-law rules pose problems in consumer fraud cases that attempt to certify

nationwide classes because the injury is where the consumer is located). In light of this, the Court dismisses Count I without prejudice. If Plaintiffs wish to amend their Complaint and propose to include a subclass that includes only consumers who resided in Massachusetts at the relevant time period, Plaintiffs can re-file their claim under Massachusetts General Laws. *See, generally*, *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009) (creating subclasses of consumers with respect to statutory consumer fraud claims).

### B. Count II - Illinois Statutory Consumer Fraud Claim

Count II alleges Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). *See* 815 ILCS 505/1 *et seq*. The ICFA makes it "unlawful to use deception or fraud in the conduct of trade or commerce." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

Defendants argue Plaintiffs' ICFA claim fails because the connection between the alleged wrongful conduct and Illinois is insufficient. They rely upon the Illinois Supreme Court's decision in *Avery v. State Farm Mutual Automobile Insurance Company*, 835 N.E.2d 801, 854 (Ill. 2005) which held that the ICFA only applies to nonresident claimants if the circumstances of the disputed transaction occurred "primarily and substantially" in Illinois.

Plaintiffs respond that the transactions occurred primarily in Illinois. They argue that since HighBeam is headquartered in Illinois and the User Agreement includes a choice-of-law provision specifying Illinois, the transactions at issue occurred in Illinois. The Court disagrees.

Determining whether a putative nonresident plaintiff may bring an ICFA claim is a fact specific inquiry. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). The courts consider a number of factors including: (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that was the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice-of-law provisions; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints were to be directed. *See Haught v. Motorola Mobility, Inc.*, No. 12-C-2515, 2012 WL 3643831, at *3 (N.D. Ill. Aug. 23, 2012) (citing *Avery*, 835 N.E.2d at 854–855).

In *Haught*, the plaintiff, an Ohio resident, brought a class action suit and asserted an ICFA claim based upon the defendant's alleged misleading representations. *Id.* at *1. In dismissing the ICFA claim, the court found the transaction too tenuously connected to Illinois to have occurred "primarily and

substantially in Illinois." *Id.* at *4. There, the plaintiff argued the transaction occurred in Illinois because the alleged misrepresentations were disseminated on the defendant's website which was designed in Illinois and argued that the relevant agreement included a choice-of-law provision that designated Illinois as controlling. *Id.* While the court in *Haught* noted that these were factors to consider in determining where the transaction occurred, it found dismissal appropriate. The court reasoned that since the plaintiff's injury occurred in Ohio, the transaction could not have occurred primarily in Illinois. *Id.* at *5.

The facts here are similar to *Haught*. Here, the individual Plaintiffs are nonresidents of Illinois. Bagg is from Massachusetts, Crotty is from Maryland, Dillon is from Maryland, and Johnston is from Washington. *See* Amend. Comp. ¶¶ 4-8. Thus, each suffered an injury in their respective home state. Pursuant to *Haught*, it is the Plaintiff's home state where the transactions at issue occurred, not Illinois. *See Haught*, 2012 WL 3643831, at *5. While Plaintiffs claim the Court should find the ICFA claim appropriate because the User Agreement includes a choice-of-law provision designating Illinois, an Illinois choice-of-law provision "is not dispositive of the effect of the ICFA on nonresident claimants." *Id.*

Plaintiffs' arguments regarding HighBeam's headquarters are equally unavailing. While the Court acknowledges that a defendant's headquarters is a factor that weighs in Plaintiffs' favor, courts in this district have held this is "far from dispositive" in determining whether a transaction occurs primarily and substantially in Illinois. *Van Tassell v. United Mktg. Group, LLC*, 795 F.Supp.2d 770, 782 (N.D. Ill. 2011).

Indeed, in *Van Tassell*, (a case factually similar to the one at bar), two named plaintiffs brought a putative class action suit against four businesses claiming that the businesses violated the ICFA through alleged deceptive practices. *Id.* The plaintiffs alleged that defendants were liable because they offered a one dollar trial membership program on a website and after the trial membership ended began charging each plaintiff a monthly fee without their knowledge. *Id.* at 774. In dismissing the plaintiffs' ICFA claim, the court found the plaintiffs' connection to Illinois insufficient. The court acknowledged that one of the defendants was headquartered in Illinois and noted that the alleged deceptive conduct was disseminated from a website designed in Illinois, but determined this to be insufficient for the purposes of the plaintiffs' ICFA claim. *Id.* at 782.

Similarly, in this case, Plaintiffs are all nonresidents of Illinois and only Defendant HighBeam is headquartered here.

Thus, even if the Court assumes HighBeam's website is designed in Illinois and the alleged deceptive conduct was disseminated to Plaintiffs from Illinois, this is insufficient for the purposes of ICFA.

Accordingly, Plaintiffs do not have a cognizable cause of action under the ICFA. As such, Count II is dismissed.

**C.  Count III - Automatic Contract Renewal Claim**

Plaintiffs also allege a violation of the Illinois Automatic Contract Renewal Act (the "IACRA"). The IACRA provides that any business or corporation "that sells or offers to sell any products or services to a consumer pursuant to a contract, where such contract automatically renews unless the consumer cancels the contract, shall disclose the automatic renewal clause clearly and conspicuously in the contract, including the cancellation procedure." 815 Ill. Comp. Stat. Ann. 601/10. It also states that when a contract is for a minimum twelve months and automatically renews for more than one month unless the consumer cancels, businesses must provide written notification of the automatic renewal and detail the cancellation procedure. 815 Ill. Comp. Stat. Ann. 601/10(b).

Defendants argue Count III should be dismissed because the User Agreement discloses the automatic renewal clause clearly and conspicuously. They claim that the phrase: "IMPORTANT – AUTO-

RENEWING CONTRACT – READ CAREFULLY BEFORE USING THIS SERVICE" constitutes a clear disclosure under the IACRA.

Plaintiffs disagree. They point out that the above phrase is only accessible to consumers through a hyperlink and not included in the body of the free trial webpage. Plaintiffs also claim that Defendants violated the IACRA by failing to provide written notification of the automatic renewal.

After reviewing Plaintiffs' Amended Complaint, the Court finds Plaintiffs' allegations sufficient. Plaintiffs allege Defendants' contract "failed to disclose the automatic renewal clause clearly and conspicuously in the contract, including the cancellation procedure." Amend. Comp. ¶ 86. They also claim that any written notice Defendants may have provided "did not disclose clearly and conspicuously that unless consumer . . . cancel[led] the contract it w[ould] automatically renew." *Id.* ¶ 91. At this stage in the litigation, the Court accepts these allegations as true and finds them sufficient to state a claim under the IACRA. *See Ford v. Pacific WebWorks, Inc.*, No. 09-C-7867, 2011 WL 529265, at *4 (N.D. Ill. Feb. 4, 2011) (finding plaintiffs' allegations that "the real price . . . was hidden in small print or not disclosed at all," sufficient to avoid dismissal of an IACRA claim).

Defendants also argue dismissal is appropriate because they qualify for the IACRA's safe harbor provision. However, to take advantage of this provision, a business must demonstrate that,

> as part of its routine business practice: (I) it has established and implemented written procedures to comply with this Act and enforces compliance with the procedures; (ii) any failure to comply with this Act is the result of error; and (iii) where an error has caused a failure to comply with this Act, it provides a full refund or credit for all amounts billed to or paid by the consumer from the date of the renewal until the date of the termination of the account, or the date of the subsequent notice of renewal, whichever occurs first.

815 Ill. Comp. Stat. Ann. 601/10(c).

After reviewing the briefs and pleadings, the Court does not find Defendants can establish all of the required elements under the safe harbor provision. First, Defendants cannot prove (at this juncture) that they have policies and procedures that are established to ensure compliance with IACRA. Next, Defendants cannot satisfy the third element – that when an error causes a failure of compliance, a refund is issued. In response to Plaintiffs' point that Plaintiff Johnston never received a refund, Defendants state this is irrelevant since "[t]he exception does make the rule . . . [and] the fact that Johnston was not refunded does not speak to HighBeam's general policy and qualification for the IACRA's safe harbor provision." Defs.' Reply Br. at 14. This argument is unavailing. Even if Defendants have policies and procedures in place for the purposes

of the IACRA and Johnston was charged as a result of an administrative error, the safe harbor provision requires Defendants to issue her a refund. *See* 815 Ill. Comp. Stat. Ann. 601/10(c)(iii). The fact that Defendants admit she never received one is fatal to their argument concerning the safe harbor provision.

Accordingly, the Court finds Plaintiffs' allegations sufficient to state a claim under the IACRA. As such, Defendants' Motion to Dismiss Count III is denied.

### D. Count IV - Unjust Enrichment Claim

Plaintiffs' final claim is for unjust enrichment. "In Illinois, a claim for unjust enrichment exists when a defendant: (1) receives a benefit; (2) to the plaintiff's detriment; and (3) the defendant's retention of that benefit would be unjust." *Allant Grp., Inc. v. Ascendes Corp.*, 231 F.Supp.2d 772, 774 (N.D. Ill. 2002). Plaintiffs allege that because they purchased subscriptions to Defendants' website unknowingly, Defendants received a benefit and their retention of such benefit is unjust. *See* Amend. Compl. at 28-29. Defendants argue the claim must be dismissed because the User Agreement governs the parties' relationship.

A claim for unjust enrichment allows courts to imply the existence of a contract where none exists. *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F.Supp.2d 619, 622 (N.D.

Ill. 2008). When a claim falls within an express contract, the remedy of unjust enrichment is unavailable. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) (holding that "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract").

Plaintiffs assert their unjust enrichment claim is an independent cause of action. *See* Pl.'s Resp. at 23. They argue that the claim survives because the Seventh Circuit has held that Illinois recognizes unjust enrichment claims as independent causes of action. *See, Cleary v. Philip Morris, Inc.*, 656 F.3d 511 (7th Cir. 2011).

However, Plaintiffs fail to recognize that case law subsequent to *Clearly* makes it apparent that when a party incorporates allegations of a specific contract into its unjust enrichment claim, dismissal is appropriate. *See, Astor Professional Search, LLC v. Megapath Corp.*, No. 12-C-2313, 2013 WL 1283810 (N.D. Ill. Mar. 27, 2013).

Plaintiffs' Amended Complaint incorporates the allegations from their IACRA claim. *See* Amend. Compl. ¶ 97. The IACRA claim alleges the existence of a contract. *Id.* ¶¶ 85-88. Because of this, the Court finds dismissal appropriate. *See, The Sharrow Grp. v. Zausa Dev. Corp.,* No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004).

The Court also rejects Plaintiffs' contention that the unjust enrichment claim survives because it is pled in the alternative. While the Court acknowledges pleading in the alternative is permissible under Rule 8(d), dismissal is appropriate if Plaintiffs' unjust enrichment claim "include[s] allegations of a specific contract governing the parties['] relationship." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.,* No. 02 C 8800, 2003 WL 1907943, at *5 (N.D. Ill. Apr. 17, 2003). This is the case here, and therefore dismissal is warranted.

## IV. CONCLUSION

For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

                                                    _____
                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Date:7/10/2013